232 P.2d 383

**LEMONS et al. v. KNOX et ux.**

**No. 5288.**

Supreme Court of Arizona.

June 11, 1951.

Byrne & Byrne, of Prescott, for appellants.

A. H. Mackenzie, of Phoenix, for appellees.

STANFORD, Justice.

Action was brought in the superior court by plaintiffs, Harold A. Knox and Gladys

Fay Knox, his wife, appellees herein, who were assignees of a lease, alleging a breach of the lease on the part of the defendant-lessors, Lemons-Dunbar, et al.

Property described in the above mentioned lease included the lunch counter, a dining room, and kitchen facilities of the Palace Cafe, located in the Palace Hotel Building in the city of Prescott, Arizona. The lease permitted the lessees to assign the lease or sublet the premises, "provided said assignee or sub-lettee (was) satisfactory to the lessors".

Plaintiffs, as assignees, entered into possession of the premises and operated the cafe, including both the dining room and the lunch counter, until September 1, 1946. At that time, they entered into a written agreement with W. D. Woods and Lucinda Woods, his wife, hereinafter referred to as Woods. The essential provisions of this agreement were as follows:

"The parties of the first part are the holders, by assignment of a lease to the Palace Restaurant dated September 15, 1945, wherein P. C. Lemons and Mildred M. Lemons, his wife, and H. S. Dunbar and Harriet Dunbar, his wife, are the Lessors and Ed M. Romley, Jr., and Doris G. Romley, his wife, are Lessees, and as-signed on April 25, 1946, to H. A. Knox and Gladys Fay Knox.

"That the parties of the first part by this agreement, constitute and appoint as of September 1st, 1946, W. D. Woods and Lucinda Woods, his wife as their managers and representatives, to manage and operate the said restaurant just the same as they themselves would, were they in charge.

"Said parties of the second part are to operate the Restaurant during the term of the present lease and in compliance with all the terms of the assigned lease so as to protect at all times the interest of the parties of the first part hereto.

"That the parties of the second part are to have complete charge of all buying and are to pay and keep paid all bills, including all taxes, as they become due and to pay all help and the said parties of the first part are not to be held responsible for any bills or wages or taxes contracted by the said second parties.

"From the moneys taken in, the said second parties are to pay to the parties of the first part on or before the first day of each month One Hundred Fifty Dollars ($150.00) so long as he manages the Restaurant; the balance of the money taken in to be retained by said second parties to take care of all expenses, except hereinafter stated, and as compensation for himself. Parties of the first part hereby agree to keep the said lease paid as it becomes due. The returns from the slot machines are to be divided 50–50.

"The inventory as of September 1, 1946, is to be taken over by parties of the second part and are to be paid for as to be agreed upon by the parties hereto.

"In case the Restaurant is sold, then and in that event the party of the second part is to paid 5% of the sale price."

Terms of the agreement were in effect and carried out until February 1, 1947, at which time Woods apparently decided to discontinue operation of the cafe. Woods advised the defendants that he couldn't make a go of it and surrendered possession and delivered up the keys.

Plaintiffs, by their complaint, alleged injury as a result of defendants' breach of the lease in that they, the plaintiffs, were prevented from enjoying the occupancy of the premises in question, alleging also damages for defendants' conversion of certain equipment which was locked in the cafe, and for exemplary damages.

Plaintiffs' contention at the trial was that the defendants refused them access to the premises after Woods left and in fact replaced the locks on all the doors and even refused to admit prospective sub-lettees when they were brought to view the cafe and fixtures, thereby breaching the lease.

Defendants filed a counterclaim alleging that the Knox-Woods agreement, though called a managerial contract, in fact constituted an assignment of the lease, which, without the consent of the lessors, amounted to a breach of the lease, and at the close of the evidence, moved for a directed verdict, which was denied as to the alleged breach of contract but granted as to plaintiffs' allegation of conversion.

The jury returned a verdict in favor of the plaintiffs in the sum of $1,970.00, on the original complaint, and also in their favor as cross-defendants on the defendants' counterclaim, and judgment was entered in accordance therewith. This is an appeal from that judgment and from the order of the court denying defendants' motion for a new trial.

In bringing this appeal, defendants do not argue against the plaintiffs' contention that they, defendants, have treated the lease as being at an end and have exercised complete control over the premises. Defendants however advance two theories on which to base their argument. The first is that there was a complete assignment of the lease, to Woods, who then surrendered possession of the premises to defendants, thereby forfeiting the lease and giving them (defendants) right of immediate possession. The second is that the assignment was done without the consent of defendants and therefore constituted a breach of the lease by plaintiffs and gave defendants the right to declare the lease at an end and take possession of the premises.

There is presented here only one assignment of error which is based upon the lower court's denial of the motion for a directed verdict: "The trial court erred in its failure, at the close of the evidence on the trial of the cause, to direct the jury to return a verdict in favor of appellants, for the reason that under the undisputed evidence as a matter of law, appellees wholly

failed to show a wrongful termination of the lease by appellants, which showing was required in order to entitle appellees to recover damages from appellants."

Defendants contend that the legal effect of the above-mentioned agreement was an assignment of the leasehold by the plaintiffs to Woods and wife for the balance of the term of the original lease. Plaintiffs contend, on the other hand, that it is a contract of employment. In this connection, defendants were not aware of the existence of this agreement until some time after the alleged wrongful termination of the lease on or about February 2, 1947.

A reading of this agreement discloses there are words used, which, if standing alone, would make the legal effect that of a contract of employment. But from the entire content of the agreement, it is readily apparent that the legal effect is, as defendants contend, an assignment of the leasehold, subject only to the right of the assignor to terminate the lease by a sale of it to a third party.

It is observed that Woods was to operate the restaurant or cafe during the term of the original lease and in compliance with its terms. He was to do all buying, and to pay all bills, including the hiring and paying of help. His only obligations to plaintiffs were the payment of the monthly sum of $150.00 and the accounting to the plaintiffs of one-half of the returns from slot machines. Woods took over the inventory on hand as of the date of taking possession of the lease, and was to pay the Knoxes therefor.

The use of the words in the agreement of constituting and appointing Woods manager and representative of plaintiffs would indicate, if standing alone, that it was the intent of the parties that the relationship of employer and employee was to ensue. However, a reading of the entire contract, which should be done in order to obtain the real intent of the parties, makes the mentioned words inapt expressions or dry words. The rule that the intent of the parties as ascertained from the contract must control does not apply to the use of such expressions or dry words. From 12 Am.Jur., Contracts, Sec. 229, we quote: "Although the intent of the parties, when manifest, or when ascertained from the contract, must control without regard to inapt expressions or the dry words of the contract, this rule does not apply where such intent is directly contrary to the plain sense of the words of the agreement. * * *. Where it is plain that a strict and literal construction of a contract does not convey the real meaning of the parties, such construction must not be entertained."

And, from the same volume, Sec. 236: "The letter of the contract is to be controlled by its spirit and purpose. The terms employed are servants, and not mas-

ters, of an intent; they are to be interpreted so as to subserve and not subvert such intent."

"It is true that the intention of the parties to a contract cannot prevail if directly contrary to the plain sense of the words employed; but when the intention is sufficiently apparent, effect should be given to that intent though some violence is thereby done to the words." 6 R.C.L. page 842.

As to the construction put upon the contract by the parties, it will be seen from the evidence that Woods was not manager for Knox, but a tenant. Mr. Knox lived in Phoenix during the period Woods was in possession, being from September, 1946, until the time Woods left in the latter part of January, 1947. During that period, Mr. Knox' only contact with Woods and the Palace Cafe or Restaurant was his visits to Prescott on October 1, November 1, December 1, 1946, and on January 1, 1947, each time to collect his monthly rental of $150.00 from Woods and his share of the slot machine take, and pay for one waitress which the landlords had agreed to reimburse for services rendered to the landlords in the operation of their bar.

As the leasehold involved in litigation was terminated by the voluntary act of the lessees, assigning or subletting without consent, no cause of action could vest in plaintiffs for its termination, and the trial court erred in failing to instruct the jury to bring a verdict in favor of defendants.

The judgment is reversed and the cause remanded with instructions to dismiss the complaint and enter judgment for defendants.

UDALL, C. J., and PHELPS, DE CONCINI and LaPRADE, JJ., concurring.