490 P.2d 10

**STATE of Arizona, Plaintiff,**

v.

**Stanley ALLEN, Defendant.**

**No. 2345.**

Supreme Court of Arizona,
In Banc.

Nov. 2, 1971.

Moise Berger, Maricopa County Atty., by Robert F. Retzer, Deputy County Atty., Phoenix, for plaintiff.

Evans & Kunz, Ltd., by Donald R. Kunz and William G. Stinson, Phoenix, for defendant.

CAMERON, Justice.

This is a Certification of Question under Rule 346, Rules of Criminal Procedure, 17 A.R.S.

Two questions are presented:

1. Whether § 44–1844, subsec. 3 A.R.S., which exempts a bona fide owner of shares of stock or securities from the registration requirements if he sells those stocks in an "isolated transaction" but does not exempt him if they are sold in "repeated or successive transactions of similar character," is void because of indefiniteness and vagueness.

2. Whether the bona fide owner of corporate shares, selling the same under § 44–1844, subsec. 3 A.R.S. must be registered as a dealer or salesman, or whether such requirement is excused by 44–1801, subsec. 2 A.R.S.

The facts stipulated by the parties are in part as follows:

"Prior to June 26, 1969, Defendant, Stanley Allen, was the lawful owner of 7,500 shares of the capital stock of Regency Inns of America, Inc., an Airzona corporation, being evidenced by a *single certificate*, Certificate No. 026, issued January 27, 1969, and physically delivered to said Defendant on February 9, 1969. Through a stock split declared by the corporation, on a one-for-one basis, the foregoing ownership was increased to 15,000 shares.

"Subsequent to delivery to the Defendant of the original single certificate, Defendant contracted to sell some of his shares by various contracts in writing, of which a specimen is attached. Specifically, defendant contracted to sell the following numbers of shares to the following named persons at the prices here-

inafter set forth on or about the dates hereinafter set forth:

"1. On June 26, 1969, 100 shares at $3.00 per share to Herman J. Workman.

"2. On September 26, 1969, 100 shares at $3.00 per share to Herman J. Workman.

"3. On October 3, 1969, 200 shares at $2.00 per share to Herman J. Workman.

"4. On October 7, 1969, 200 shares at $2.00 per share to Herman J. Workman.

"5. October, 1969, 100 shares at $3.00 per share and 100 shares at $2.00 per share to Mrs. Teresi.

"6. October, 1969, 200 shares at $3.00 per share and 100 shares at $2.50 per share to Thomas Workman.

"7. On November 19, 1969, 100 shares at $5.00 per share to Ralph Jackson.

"8. On November 26, 1969, 200 shares at $5.00 per share to Mr. & Mrs. Mettile.

"9. On December 8, 1969, 1000 shares at $5.00 per share to Elmer J. Schmidt.

"10. On December 8, 1969, 1000 shares at $5.00 per share to Hestor J. Schmidt.

"No shares were delivered to the vendees on the foregoing dates, it being understood between the Defendant and the vendees that Defendant's holdings would have to be 'broken down' before such shares could be delivered.

\*     \*     \*     \*     \*     \*

"It is stipulated by the parties that the aforesaid sales were made in good faith and not for the purpose of avoiding the provisions of Title 44, Chapter 12, A.R.S., that Stanley J. Allen was the bona fide owner thereof, that he was neither an issuer not underwriter of the shares aforesaid, that the securities were sold directly by him, and that such sales were not made directly or indirectly for the benefit of the issuer or an underwriter of the securities, all within the meaning of Section 44–1844 subsec. 3, A.R.S.

"The parties do not agree, however, whether the foregoing sales were or were not in an 'isolated transaction' or whether such sales were or were not 'made in the course of repeated or successive transactions of similar character.' The parties stipulate that the sale of any number of shares to a *single* vendee would constitute no crime whatever. However the State takes the position that any sale of any number of shares to *more than one vendee* over *any period of time* is *not* 'an isolated transaction' and *would* constitute 'repeated or successive transactions of similar character.' Defendant contends, as set forth in his Motion to Quash, that the statutory proscription against sales 'made in the course of repeated or successive transaction[s] of similar character' is so indefinite and uncertain as to fail to fairly apprise a bona fide owner of corporate stock as to when, how, and to whom he may dispose of the same without committing a felony or felonies."

It is stipulated that defendant was not a registered dealer, nor were the securities registered, nor were the sales exempt unless exempted by § 44–1844 subsec. 3 A.R.S. It is further stipulated that the sales were made in good faith and not for the purpose of avoiding the provisions of Title 44, Chapter 12 A.R.S. The parties do not agree, however, whether the foregoing sales were an "isolated transaction" or were "made in the course of repeated or successive transactions of similar character."

## IS § 44–1844, subsec. 3 A.R.S. VOID FOR VAGUENESS?

█ § 44–1844 reads in pertinent part:
"The provisions of § 44–1841 and 44–1842 shall not apply to any of the following classes of transactions:

\*     \*     \*     \*     \*     \*

"3. The sale in good faith and not for the purpose of avoiding the provisions of this chapter of securities by the bona fide owner thereof, other than an issuer or underwriter, in an isolated transaction,

in which the securities are sold either directly or through a dealer as agent for the owner but where the sales are not made in the course of repeated or successive transactions of similar character by the owner and are not made directly or indirectly for the benefit of the issuer or an underwriter of the securities."

This court has stated:

" * * * [I]n order for a penal statute to be constitutional it must be sufficiently definite and certain to inform members of society what they may, and what they may not, legally do. If the statute is found to be indefinite and uncertain then it is in conflict with the 'due process' clauses of both our Federal and State Constitutions and must be declared void." State v. Berry, 101 Ariz. 310, 312, 419 P.2d 337, 339 (1966).

This does not mean that drafters of legislation are so restricted that they can never enact a definite and certain penal statute:

" * * * The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to be punished; but the *Constitution does not require impossible standards.* The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more." United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877, 1883 (1947).

In determining whether a statute is void for vagueness the statute must be read in its entirety. In the instant case, the parties emphasize the "repeated or successive transactions" clause in paragraph 3 of § 44–1844 A.R.S. to the exclusion of the second additional requirement that the sales "are not made directly or indirectly for the benefit of the issuer or an underwriter of the securities." We believe that the intent of the legislature was that owners who sold their stock in successive and repeated transactions *and* were also selling for the benefit

(directly or indirectly) of the issuer or underwriter were not to be entitled to the exemption granted by § 44–1844 A.R.S. In the instant case, while the defendant certainly made repeated and successive sales, it was stipulated "that such sales were not made directly or indirectly for the benefit of the issuer or underwriter of the securities." We believe this statute puts a person in the position of being notified that if he wishes to sell his own stock in good faith, he is entitled to the exemption. If the ownership is a subterfuge for the unlicensed sale of stock of an issuer or an underwriter he can lose his owner's exemption. We do not find this vague or indefinite as applied to the facts in this case.

The answer to the first question is no— the statute is not void for vagueness.

## MUST THE OWNER BE REGISTERED?

■ § 44–1801 A.R.S. states in part as follows:

"2. 'Dealer'

"(a) Means a person who directly or indirectly engages full or part time in this state as agent, broker or principal in the business of offering, buying, selling or otherwise dealing or trading in securities issued by another person, and who is not a salesman for a registered dealer or is not a bank, savings institution or trust company the business of which is supervised and regulated by an agency of this state or the United States.

\*    \*    \*    \*    \*    \*

"(d) Does not include a person who buys or sells securities for his own account, either individually or in a fiduciary capacity, but not as part of a regular business."

Whether a person is a dealer is a fact question for the trier of fact. Whether the sale is "in good faith and not for the purpose of avoiding the provisions of this chapter" is also a fact question, but we have no difficulty in stating that an owner of shares of stock who comes within the exemption provided in paragraph 3 of § 44–1844 A.R.S.

is not a dealer within the meaning of § 44–1801 A.R.S.

Although the Certified Question is whether a bona fide owner selling under § 44–1844, subsec. 3 A.R.S. is excused from registration by § 44–1801, subsec. 2 A.R.S., we believe the question could just as well have been whether § 44–1844, subsec. 3 A.R.S. will excuse a person from being considered a dealer by the definition of § 44–1801, subsec. 2 A.R.S. In any event, we hold that the answer to the second question is that one covered by the exemption contained in § 44–1844, subsec. 3 A.R.S. need not register as a dealer as defined by § 44–1801, subsec. 2 A.R.S.

STRUCKMEYER, C. J., HAYS, V. C. J., and UDALL and LOCKWOOD, JJ., concur.