503 P.2d 833

Charles KALAV and Olivia M. Kalav, husband and wife, Appellants,

v.

Donald PITT, Receiver for N. Pfeffer Jewelers, Inc., a corporation, Appellee.

No. 2 CA–CIV 1182.

Court of Appeals of Arizona, Division 2.

Nov. 28, 1972.

Rehearing Denied Dec. 27, 1972.

Review Denied Jan. 30, 1973.

Johnson, Hayes, Morales & Stompoly, P. C., by Donald E. Gabriel, Tucson, for appellants.

Goldbaum & Goetz, by Norris L. Ganson, Tucson, for appellee.

HOWARD, Judge.

Newton Pfeffer was the principal stockholder of a corporation which owned a jewelry store in Tucson, Arizona. In April or early May of 1968, appellant Charles Kalav and a Mr. Klavir entered into an agreement with Newton Pfeffer whereby they gave him 5,000 shares of Rajac stock as their nominee. Pfeffer was to sell the stock on the open market and credit the accounts of Kalav and Klavir with the proceeds of the sale. Subsequent to the initial transfer of the stock to Pfeffer, he sold the same. Kalav purchased jewelry from the store, and an additional 10,000 shares of Rajac stock were transferred to Pfeffer in exchange for payment in full of a $100,000 balance of an account in the name of Kalav and Klavir. Pfeffer sold additional amounts of the Rajac stock and Kalav purchased additional merchandise from the jewelry store.

Newton Pfeffer died on March 29, 1969, and N. Pfeffer Jewelers, Inc. filed a proceeding in bankruptcy under Chapter XI, in which the appellee was appointed receiver. Thereafter, appellee brought this action.

The amended complaint filed in this case contained three counts. The first was an account stated for merchandise sold and delivered. The second count alleged that Kalav together with one Bernard Klavir delivered to Newton Pfeffer a total of 14,000 shares of Rajac Industries, Inc., common stock (which the trial court found to be 15,000 shares) for which Pfeffer granted to Kalav and Klavir a paid-up account in the amount of $100,000. The second count further alleged that at the time of the stock transfer to Pfeffer, the stock was required to be registered pursuant to the provisions of either the Securities and Exchange Act of 1933 and 1934 and/or the Arizona Security Act; that the stock was not registered under either Act and that by reason thereof there was a failure of consideration for the granting of the paid-up account and appellee was entitled to rescission of the transaction. The third count alleged that Kalav and Klavir engaged in a fraudulent scheme thereby obtaining merchandise and credits in the amount of $100,000.

At the conclusion of the trial, appellee elected to proceed only on counts two and three of the amended complaint.

The trial court, sitting without a jury, found in favor of the appellee on count two of the amended complaint and made the following written findings of fact and conclusions of law:

## "FINDINGS OF FACT

### I

That Donald Pitt, Receiver for N. Pfeffer Jewelers, Inc., a corporation, plaintiff, is a duly appointed and acting receiver of N. Pfeffer Jewelers, Inc., which is a debtor under bankruptcy proceedings in the United States District Court in the District of Arizona; and the defendants are residents of Pima County, Arizona.

### II

That in April or early May 1968, defendant [sic] Charles Kalav and Klavir entered into an arrangement with N. Pfeffer whereby Kalav and Klavir caused to be delivered to N. Pfeffer five thousand (5,000) shares of Rajac Industries stock as their nominee as a security device for the purchase of jewelry by Kalav and Klavir. Thereafter, N. Pfeffer was to sell said stock for and on behalf of Kalav and Klavir and apply the proceeds of such sales to the accounts of Kalav and Klavir in equal shares, any balances remaining to be the respective obligations of Kalav and Klavir.

### III

That during the period of May 7, 1968, and December 2, 1968, defendants purchased jewelry in the amount of Fifty-two Thousand One Hundred Twelve and 12/100 ($52,112.12) Dollars from N. Pfeffer Jewelers, Inc.

### IV

That N. Pfeffer sold said five thousand (5,000) shares of stock, realizing from the sale thereof the sum of Thirty-one Thousand Seventy-three and 50/100 ($31,073.50) Dollars and that he credited to the account of Kalav the sum of Thirty-five Thousand Four Hundred Forty-seven and no/100 ($35,447.00) Dollars, leaving an unpaid balance thereon in the sum of Twenty-four Thousand Eight Hundred Sixty-one and 41/100 ($24,861.41) Dollars.

### V

That on December 2, 1968, defendant [sic] Charles Kalav and Klavir transferred to N. Pfeffer ten thousand (10,000) shares of Rajac Industries stock in exchange for a paid up account to Klavir and Kalav and not as a security device as in the previous arrangement of May 6, 1968, in the sum of one Hundred Thousand ($100,000.00) Dollars, to be shared by Kalav and Klavir.

### VI

That since December 2, 1968, defendant Charles Kalav purchased additional merchandise in the sum of Twenty-four Thousand Two Hundred Fifty-nine and 45/100 ($24,259.45) Dollars, leaving an unpaid balance on said account in the sum of Forty-nine Thousand One Hundred Twenty and 86/100 ($49,120.86) Dollars.

### VII

That of the total numbers of shares of Rajac Industries stock transferred to N. Pfeffer, the defendant Charles Kalav transferred seven thousand five hundred (7,500) shares which consisted of two thousand five hundred (2,500) shares transferred in May 1968, and five thousand (5,000) shares transferred, pursuant to the December 2, 1968, arrangement.

### VIII

That plaintiff elected to rescind the agreement of December 2, 1968, upon the ground that the Rajac Industries stock was not registered pursuant to A.R.S. 44–1841, et seq. and the Securities and Exchange Act of 1934 and 1935.

### IX

That the Rajac Industries stock transferred to N. Pfeffer by defendant Charles Kalav was not registered with the Securities Division of the Arizona Corporation Commission or with the Securities and Exchange Commission.

## X

*That the sale of the stock of Rajac Industries to N. Pfeffer was not an isolated transaction and, therefore, was not exempt from registration.* (Emphasis added.)

## XI

That the issue of election of remedies was not raised in the plaintiff's or defendants' pleadings or made an issue at the pre-trial [sic] conference, and in any event, said issue is not applicable.

## XII

That in the event that the defendants are unable to return the merchandise, the plaintiff has been damaged in the sum of Twenty-two Thousand Three Hundred Ninety-six and 05/100 ($22,396.05) Dollars.

## XIII

That a reasonable attorneys' fee for the legal services rendered to the plaintiff in this matter is in the sum of Five Thousand ($5,000.00) Dollars.

## CONCLUSIONS OF LAW

### I

That the Court has jurisdiction of the parties and the subject matter.

### II

That it was necessary for the Rajac Industries stock in question to be registered with the Securities Division of the Arizona Corporation Commission, pursuant to the provisions of A.R.S. 44–1841, et seq. and with the Securities and Exchange Commission, pursuant to the provisions of the Securities and Exchange Act of 1934 and 1935.[1]

### III

That the plaintiff is entitled to recission [sic] of the agreement of December 2, 1968, pursuant to the provision of A.R.S. 44–2001 or damages, pursuant to the provisions of A.R.S. 44–2002. . . ."

In accordance with the foregoing findings of fact and conclusions of law, the court entered judgment ordering the appellee to return to the appellant 7,500 shares of Rajac Industries stock and that the appellants return to the appellee all merchandise purchased subsequent to May 7, 1968, in the same condition and of the same value as when purchased. The judgment further ordered that in the event that either party could not fulfill the foregoing requirements, the appellee was to recover from the appellants $22,396.05. The court also ordered that the appellants pay to appellee $5,000 as and for attorney's fees.

Although appellants present to this court several questions for review, the pivotal question is whether the transfer of the Rajac stock to Pfeffer was violative of either state or federal law.

A.R.S. § 44–1841 provides as follows:

"A. It is unlawful to sell or offer for sale within or from this state any securities unless such securities have been registered by description under §§ 44–1871 through 44–1875 or registered by qualification under §§ 44–1891 through 44–1900, except securities exempt under § 44–1843 or securities sold in exempt transactions under § 44–1844. . . ."

\* \* \* \* \* \*

Appellee contends that the transfer of the Rajac securities to Pfeffer violated the foregoing statute and that he is entitled to recover the consideration given for the securities with interest thereon, taxable court costs and reasonable attorneys' fees pursuant to A.R.S. § 44–2001.

Appellants claim that the transfer of securities by Kalav was an exempt transaction under A.R.S. § 44–1844 which pro-

1. The "Securities and Exchange Act of 1934" deals with the regulation of security exchanges. There is no "Securities and Exchange Act of 1935." Appellee claims the court really meant the "Securities Act of 1933."

vides that § 44–1841 shall not apply in the following class of transactions:

\* \* \* \* \* \*

"3. The sale in good faith and not for the purpose of avoiding the provisions of this chapter of securities by the bona fide owner thereof, other than an issuer or underwriter, in an isolated transaction, in which the securities are sold either directly or through a dealer as agent for the owner but where the sales are not made in the course of repeated or successive transactions of similar character by the owner *and* are not made directly or indirectly for the benefit of the issuer or an underwriter of the securities." (Emphasis added.)

\* \* \* \* \* \*

Although this court cannot set aside the trial court's findings of fact unless they are shown to be clearly erroneous, we are not bound, however, by the trial court's conclusions of law and may draw our own legal conclusions from the undisputed facts. Zellerback Paper Company v. Valley National Bank, 13 Ariz.App. 431, 477 P.2d 550 (1970). Both parties concede in their briefs on appeal that Kalav was the owner of the stock which he transferred to Pfeffer, having obtained same when Rajac Industries acquired several corporations in which he had an interest.[2] It is obvious that the trial court based its decision on the fact that Kalav had made repeated transfers of his stock and that the transfer in question was not an isolated transaction. Subsequent to the trial of this case the Arizona Supreme Court decided State of Arizona v. Allen, 107 Ariz. 538, 490 P.2d 10 (1971) wherein the court stated as follows:

" . . . In the instant case, the parties emphasize the 'repeated or successive transactions' clause in paragraph 3 of § 44–1844 A.R.S. to the exclusion of the second additional requirement that the sales 'are not made directly or indi-

rectly for the benefit of the issuer or an underwriter of the securities.' We believe that the intent of the legislature was that owners who sold their stock in successive and repeated transactions *and* were also selling for the benefit (directly or indirectly) of the issuer or underwriter were not to be entitled to the exemption granted by § 44–1844 A.R.S. . . ."

█ It was therefore incumbent upon the trial court to not only find that Kalav was making repeated or successive sales of the Rajac stock, but also that such sales were made directly or indirectly for the benefit of the issuer or underwriter of the securities. The terms "issuer" and "underwriter" are defined in A.R.S. §§ 44–1801, subsec. 4 and 44–1801, subsec. 14 respectively. Such terms are also defined in 15 U.S.C.A. § 77b. The trial court made no findings of fact which would support a conclusion that appellant Charles Kalav was an "underwriter" or "issuer" and its conclusions of law did not so state.

█ Assuming arguendo that the trial court meant the "Security Act of 1933" instead of "Securities and Exchange Act of 1934 & 1935" in its conclusions of law, the record reflects no findings of fact which would support a conclusion that appellants violated said Act. 15 U.S.C.A. § 77e makes it unlawful to use the mails to sell unregistered securities. 15 U.S.C.A. § 77*l* provides that any person who sells a security in violation of § 77e shall be subject to a suit for rescission by the purchaser. 15 U.S.C.A. § 77v gives state courts concurrent jurisdiction with the federal courts. § 77e does not apply to transactions by a person other than an issuer, underwriter or dealer as defined in 15 U.S.C.A. § 77b. As previously noted, the court made no findings or conclusions of law relative to these terms, nor does the record reveal any findings which would make appellant Charles

---

**2.** A.R.S. § 44–1844 states that the provisions of §§ 44–1841 and 44–1842 shall not apply to the issuance and delivery of securities to another corporation or its security holders in connection with consolidation or merger of the corporation.

Kalav a "statutory underwriter" by virtue of 17 C.F.R. 230.133 (1972).[3]

There being no findings of fact to support the trial court's conclusions of law, it is ordered that the judgment be reversed and that the trial court enter judgment in favor of the appellants and against the appellee.

KRUCKER, C. J., and HATHAWAY, J., concur.

3. This regulation deals, inter alia, with the distribution of securities acquired in a merger. For a discussion of statutory underwriters, see H. Sowards, Comments, Cases and Materials on Securities Regulation (1966), pp. 84–100.