505 P.2d 268

George K. RIFFLE, Appellant,

v.

ROBERT L. PARKER COMPANY, an Arizona corporation, et al., Appellees.

ROBERT L. PARKER COMPANY, an Arizona corporation, et al., Cross-Appellants,

v.

George K. RIFFLE and Patricia Ann Riffle, husband and wife, Cross-Appellees.

No. I CA–CIV 1736.

Court of Appeals of Arizona, Division 1, Department B.

Jan. 11, 1973.

Rehearing Denied Feb. 9, 1973.

Review Denied March 13, 1973.

Treon, Warnicke & Dann by B. Michael Dann, Phoenix, for appellant and cross-appellees.

Kanne & Bickart, Lawrence J. Marks, Phoenix, for appellees and cross-appellants.

JACOBSON, Chief Judge.

This appeal requires the court to determine, among other things, whether a transaction whereby the assets of a partnership were transferred to a corporation in ex-

change for stock of the corporation is in violation of Arizona's Blue Sky Laws.

This question arises out of litigation instituted by appellant-cross-appellee, George K. Riffle, against appellees-cross-appellants, Robert L. Parker Company, an Arizona corporation, and the marital community of Robert L. Parker and Zelda M. Parker, seeking rescission of the transfer of one-half of a partnership interest to Robert L. Parker Company (the corporation) in exchange for certain stock of the corporation.

The original complaint in this matter was in four counts. Count one sought a partnership accounting between George K. Riffle and his former partner. This count was settled and dismissed prior to trial. Count two sought rescission of the merger agreement between the partnership and the corporation based upon a breach of contract and alleged failure of consideration. The trial court directed a verdict in favor of appellees on this count and no appeal has been taken therefrom. Count three sought rescission of the merger agreement on the grounds that the sale of 1,000 shares of corporation stock to George K. Riffle was in violation of the Arizona Sale of Securities Act. A.R.S. § 44–1801 et seq. Prior to trial both parties moved for partial summary judgment as to this count. The trial court granted appellees' motion for partial summary judgment. George K. Riffle has appealed from this judgment. Count four sought damages from the appellees for an assault. The assault count and appellees' consolidated complaint for trespass against George K. Riffle were the only issues submitted to the jury which returned a verdict in favor of George K. Riffle in the sum of $1,000.00 on the assault count and denied appellees relief on the trespass action. Appellees have cross-appealed from the judgment entered on this verdict.

. The facts giving rise to this litigation are as follows: In 1966 appellant George K. Riffle (Riffle) and his brother Eugene entered into a general partnership for the purpose of conducting a machine shop and welding business under the partnership name of Ram Industries. The partnership did business at 42 South 42nd Street in Phoenix, Arizona, and occupied the premises at this location under a lease executed by the two partners and their respective wives under the name of Ram Industries. This lease contained a provision prohibiting assignment without the prior written consent of the landlord.

In the summer of 1968, Robert L. Parker Company moved next door to Ram Industries. Robert L. Parker Company had originally been incorporated in Arizona in 1964 and immediately prior to the occurrences which gave rise to this litigation had 4,000 shares of outstanding stock. This stock was held by four different stockholders each having 1,000 shares, namely, Robert L. Parker, his wife, Zelda M. Parker, Ralph R. Beckett, and Taber Putnam, S. A., a South American corporation. Ralph R. Beckett had received his 1,000 shares of stock as a result of a 1967 special order of the Securities Division of the Arizona Corporation Commission exempting the issuance of these 1,000 shares from the operation of the Arizona Sale of Securities Act.

Prior to moving next door to Ram Industries the corporation had basically been inactive. Following the move, negotiations were entered into between Robert L. Parker, as president of the corporation, and the partners to merge the two operations. These negotiations resulted in an agreement whereby the assets and liabilities of the partnership would be transferred to the corporation in exchange for each of the partners receiving 1,000 shares of the corporation's stock. The agreement further provided that the partnership and the corporation each had assets valued at $20,000.-00 and that therefore, the outstanding 4,000 shares of stock would have a value of $10.00 per share or $40,000.00. It was further agreed that after the merger Riffle would become vice-president, a member of the board of directors, and production manager of the corporation. Pursuant to

this agreement on February 1, 1969, the partnership assets and liabilities were transferred to the corporation, and subsequently each of the partners received 1,000 shares of the corporation's stock and Riffle entered into his duties as director, officer and production manager of the corporation. Riffle received the 1,000 shares that had formerly been owned by Ralph R. Beckett. The transaction took the form of Robert L. Parker giving to Beckett a promissory note in the sum of $10,000.00 in consideration of Beckett relinquishing ownership of the stock thereby permitting the corporation to transfer ownership of the stock from Beckett to Riffle on its books.

Approximately six months after the merger, Parker and Riffle's brother, Eugene, voted to discharge Riffle from his position with the corporation as director, officer, and production manager. During this six-month period of time the corporation had paid the rental under the Ram Industries lease and had conducted its business from the leased premises, although there had never been a formal assignment of the lease from the partnership to the corporation.

Following his discharge, Riffle attempted to settle his differences with his brother and Parker to no avail. Thereafter, on September 4, 1969, at approximately 6:00 A.M., Riffle, without notice to other stockholders or officers, personally paid the September rent due under the Ram Industries lease, entered upon the leased premises and positioned his truck in the open doorway of a building housing the corporation's business. He then removed a tire from his truck, blocking this doorway, cut a dozen electrical wires and pulled out various conduits in the building thereby shutting down the machinery necessary for the operation of the corporation's business. Riffle remained on the premises all that day, although asked to leave. He returned to the premises the next morning on September 5, 1969, and found the premises locked by a chain lock securing the gate to the premises. Riffle then climbed the seven or eight foot fence surrounding the premises and was almost immediately confronted by two guard dogs trained to restrain intruders and give alarm. In order to avoid these dogs, Riffle broke in a door and escaped into the building. He testified that this episode "scared him to death". Riffle's entering the premises on September 4 and 5, 1969, gave rise to appellees' cause of action for trespass and Riffle's confrontation with the guard dogs gave rise to the count in his complaint alleging assault. As previously indicated, these two issues were the only ones which were ultimately submitted to the jury for their consideration.

The only issue raised by Riffle on his appeal is whether the transfer of the 1,000 shares of the corporate stock to himself was in violation of the Arizona Sale of Securities Act thereby allowing him to rescind the transaction giving rise to the sale. The issues raised by the cross-appeal are:

(1) Did the trial court err in refusing to direct a verdict in favor of the corporation on its complaint for trespass?

(2) Was the jury's verdict denying any relief on the trespass action contrary to the evidence?

(3) Was the jury's verdict in awarding $1,000.00 damages to Riffle on his assault count the result of passion and prejudice?

Turning to Riffle's appeal first, it appears the trial court granted appellees' motion for partial summary judgment based upon the legal theory that the 1967 order of the Corporation Commission exempting the issuance of 1,000 shares of the corporate stock to Beckett was a "blanket" exemption which forever exempted these specific shares from the operation of Arizona's Sale of Securities Act. While we may not specifically agree with the trial court's reasoning in this regard, it is the duty of an appellate court to affirm the trial court if the result reached was correct even though the reasoning underlying that result may be improper. City of Tucson v. Morgan, 13 Ariz.App. 193, 475 P.2d 285

(1970); Arnold v. Knettle, 10 Ariz.App. 509, 460 P.2d 45 (1969).

Riffle's argument that the Arizona Sale of Securities Act (also referred to as the "Blue Sky" Law, A.R.S. § 44–1801 et seq.) voids the transaction whereby he acquired 1,000 shares of the corporation in exchange for his one-half interest in Ram Industries, a partnership, is based upon A. R.S. § 44–2001 [1] which provides that:

"A sale or contract for sale of any securities to any purchaser in violation of any provision of §§ 44–1841, 44–1842 or article 13 of this chapter, is voidable at the election of the purchaser, who may bring an action in a court of competent jurisdiction to recover the consideration paid for the securities, with interest thereon, taxable court costs and reasonable attorneys' fees, less the amount of any income received by dividend or otherwise from ownership of the securities, upon tender of the securities purchased or the contract made, or for damages if he no longer owns the securities."

The applicability of this statute, by its own terms, requires a violation of either A.R.S. § 44–1841 or § 44–1842. These two sections in pertinent part respectively state that:

"It is unlawful to sell or offer for sale within or from this state any securities unless such securities have been registered by description under §§ 44–1871 through 44–1875 or registered by qualification under §§ 44–1891 through 44–1900, except securities exempt under § 44–1843 or securities sold in exempt transactions under § 44–1844."

and:

"It is unlawful for any dealer to sell or purchase or offer to sell or buy any securities, or for any salesman to sell or offer for sale any securities within or from this state unless the dealer or salesman is registered as such pursuant to the provisions of article 9 of this chapter."

A.R.S. § 44–1844(3) exempts from the operation of the Act the following transactions:

"The sale in good faith and not for the purpose of avoiding the provisions of this chapter of securities by the bona fide owner thereof, other than an issuer or underwriter, in an isolated transaction, in which the securities are sold either directly or through a dealer as agent for the owner but where the sales are not made in the course of repeated or successive transactions of similar character by the owner and are not made directly or indirectly for the benefit of the issuer or an underwriter of the securities."

The transaction by which Riffle obtained his 1,000 shares of stock took the form of Beckett, in consideration of a $10,000.00 promissory note, authorizing the corporation to transfer the stock from Beckett to Riffle on the corporation's books. There is no contention that this sale was not made in good faith, that it had as its purpose avoidance of the Blue Sky laws, or that Beckett sold this stock in other than an isolated transaction. Does the fact that the president of the corporation was the moving party in the transaction or that the transfer of ownership was made by the corporation remove this sale from the exempt status of A.R.S. § 44–1844(3)? We believe not. Under the facts of this case we are of the opinion that the corporation acquired no title to these shares, but was merely the conduit through which Beckett's stock was transferred to Riffle. Crane Valley Land Co. v. Bank of America Natl. Trust & Sav. Ass'n, 182 Cal.App.2d 166, 5 Cal.Rptr. 731 (1960). As was stated in N. C. Roberts Co. v. Topaz Transformer Prods., Inc., 239 Cal.App.2d 801, 813, 49 Cal.Rptr. 209, 218 (1966):

"[a]n ostensible sale by a corporation of shares that have been validly issued

---

1. Riffle's partner, his brother Eugene, does not question this transaction and does not seek rescission of the transaction whereby he also received 1,000 shares of the corporation for his one-half interest in Ram Industries.

to a shareholder without restriction on resale and transferred to the corporation to act as a conduit in their resale to a third person does not require a permit where the resale in fact is made by the original shareholder."

A recent Arizona Supreme Court decision and an opinion of Division Two of the Court of Appeals seem to indicate that in order for a transaction to fall without the private sale exemption of A.R.S. § 44–1844(3) there must be proof of both repeated or successive sales *and* that the sales were made directly or indirectly for the benefit of the issuer. State v. Allen, 107 Ariz. 538, 490 P.2d 10 (1971); Kalav v. Pitt, 18 Ariz.App. 478, 503 P.2d 833 (Filed November 28, 1972). Applying this reasoning to the Beckett-Riffle sale, even though the corporation may have benefited from this sale, since the Beckett sale was an isolated transaction the exemption afforded by A.R.S. § 44–1844(3) was not lost.

We need not, however, rely exclusively on this reasoning in this case for in our opinion no actual benefit was conferred upon the corporation by this transaction. The corporation acquired from Riffle a partnership interest having an agreed value of $10,000.00. In making this acquisition it also incurred a bona fide indebtedness to Beckett for $10,000.00. No benefit therefore accrued to the corporation from the transaction. Having determined that the Riffle acquisition was the result of an exempt transaction, the provisions of A.R.S. § 44–1842 do not apply. State v. Allen, *supra*. The judgment of the trial court in granting summary judgment in favor of appellees as to Count three of appellant's amended complaint is affirmed.

Turning now to the cross appeal, cross-appellants insofar as their action for trespass is concerned argue either of two theories requiring reversal of the judgment against them—(1) the trial court erred in not directing a verdict in their behalf on this action or (2) the jury's verdict was contrary to the weight of the evidence.

The actions of Riffle giving rise to the action for trespass occurred on September 4 and 5, 1969. These dates were after Riffle had been formally removed as a director, officer and employee of the corporation. Given the rulings by the trial court directing a verdict against Riffle on the rescission count based upon breach of contract which had the legal effect of sanctioning the transfer of the partnership assets to the corporation in exchange for stock, the status of Riffle, vis-a-vis the corporation was, on the dates involved, merely that of a stockholder. Riffle contends, however, that in addition to being a stockholder he was also legally clothed with the mantle of a co-tenant under the prior Ram Industries lease, since this lease had never been formally assigned to the corporation or the landlord's consent to that transfer obtained. Therefore, as a co-tenant he had the right to occupy and enter the premises and could not be guilty of trespass. In essence, Riffle argues that a jury question was presented as to whether the Ram Industries lease was intended to be transferred to the corporation and whether this transfer was accomplished. We disagree.

It was undisputed that the initial merger agreement between the partnership and the corporation included the transfer of *all* the assets of the partnership to the corporation. It is not seriously argued that the partnership lease was not an asset of the partnership. It is further undisputed that following the merger, the corporation conducted its business on the former partnership's leased premises and the corporation paid the rental thereon for a six months period. Under this state of facts, the legal effect of the agreement and the actions of the parties was to cause an assignment of the lease from the partnership to the corporation as a matter of law. Lemons v. Knox, 72 Ariz. 177, 232 P.2d 383 (1951). The fact that Riffle, unbeknownst to anyone else, personally made the rental payment two days prior to his entering the premises does not increase his

rights under the assigned lease. Having held that as a matter of law the prior partnership lease had been assigned to the corporation, Riffle in legal contemplation was a stranger to the lease at the time he made his rental payment and as such was a mere volunteer and acquired no rights by such payment. Merrill v. Gordon, 15 Ariz. 521, 140 P. 496 (1914).

■■ Nor does the fact that the landlord failed to approve the assignment of the partnership lease to the corporation avail to Riffle's benefit. After the valid assignment of the lease, Riffle's remedy as an assignor was limited to taking such steps as were necessary to assure he had recourse against the corporation in the event of a breach of the lease by the corporation. A failure to obtain the landlord's consent to the assignment may very well give rise to a cause of action for breach of the lease, but this cause of action belongs to the landlord for whose benefit the covenant runs and not to Riffle who is one of the breaching parties. City of Glendale v. Barclay, 94 Ariz. 358, 385 P.2d 230 (1963); Catalina Groves v. Oliver, 73 Ariz. 38, 236 P.2d 1022 (1951).

■ Riffle also argues that a jury question was presented as to whether, assuming an assignment of the lease occurred, his consent to the assignment was withdrawn or revoked because of the alleged breach of the merger agreement between himself and the corporation. This argument flies directly in the face of the action of the trial court in directing a verdict against Riffle on his complaint seeking rescission of the merger agreement based upon breach of that agreement. The trial court having determined that there was insufficient evidence to submit to the jury the question of the corporation's breach of the merger agreement, which action Riffle has not challenged, he cannot now argue the sufficiency of this same evidence to create a jury question.

■ It thus appears that the only standing Riffle had at the time of his entry into the corporation's premises was that of a stockholder. The general rule is that a stockholder has no right, title or interest in the corporate property, Corporation Commission of Arizona v. Consolidated Stage Co., 63 Ariz. 257, 161 P.2d 110 (1945); Steinfeld v. Copper State Min. Co., 37 Ariz. 151, 290 P. 155 (1930), and thus has no right to interfere with the possessory interest of the corporation in its assets. Meadows v. Grant, 15 Ariz.App. 104, 486 P.2d 216 (1971); Steinfeld v. Copper State Min. Co., *supra*. While it is true that a stockholder has the right to enter, for a lawful purpose, the premises occupied by the corporation, for example, inspection of the corporate books (*see*, Tucson Gas & Elec. Co. v. Schantz, 5 Ariz.App. 511, 428 P.2d 686 (1967)), such an entry must be reasonable both as to time and place. The entry made by Riffle on September 4, 1969, at 6:00 A.M. and prior to business hours cannot be classified as reasonable. Even if we consider, as contended by Riffle, that his entry was for the sole purpose of removing his own personal property and thus privileged (*see*, Restatement (Second) of Torts § 177 (1965)), such a privilege was clearly exceeded when Riffle cut power lines, removed conduits, cut locks, and obstructed the business entrance. See, England v. Ally Ong Hing, 105 Ariz. 65, 459 P.2d 498 (1969); Lee v. Johnson, 70 Ariz. 122, 216 P.2d 722 (1950).

Under the circumstances of this case, Riffle, as a matter of law, was guilty of at least a technical trespass against the corporation's possessory interest and the trial court's failure to direct a verdict as to liability on the corporation's complaint is reversible error. The issue of damages, either compensatory or exemplary or both, must await a fact finder's determination on a retrial of this issue alone.

The second issue presented by cross-appellants is that the jury's verdict in the sum of $1,000.00 in favor of Riffle based on his claim of assault was the result of passion and prejudice. The claim of passion and prejudice in this case arises from the presentation to the jury of evidence dealing with Riffle's claim of breach of contract which issue was subsequently taken from the jury. This alleged prejudicial evidence centers primarily upon Riffle's evidence casting Robert L. Parker in the role of a villain and upon certain character impeachment evidence directed toward Parker individually. While this type of evidence would clearly not be admissible on the issue of assault which was ultimately submitted to the jury for consideration, it was properly introduced in connection with Riffle's claim for breach of contract. In such a situation the true test as to whether a jury's verdict is the result of passion and prejudice is whether the result reached and damages awarded are so unreasonable and outrageous as to shock the conscience of the court. Braun v. Moreno, 11 Ariz.App. 509, 466 P.2d 60 (1970); Stallcup v. Rathbun, 76 Ariz. 63, 258 P.2d 821 (1953). One thousand dollars does not shock us. The only issue raised on this point was the alleged passion and prejudice of the jury's verdict, and we expressly point out that we affirm this judgment on this issue alone, no other issues being advanced for reversal. The judgment as to Riffle's claim for assault is affirmed.

For the foregoing reasons, the summary judgment in favor of appellees as to Count three of appellant's complaint is affirmed; the judgment in favor of cross-appellee and against cross-appellants on cross-appellants' complaint for trespass is reversed and the matter remanded for a new trial on the issue of damages only.

The judgment in favor of cross-appellee and against cross-appellants for $1,000.00 based upon an assault is affirmed.

Affirmed in part; reversed in part.

EUBANK and HAIRE, JJ., concur.