540 P.2d 757

Clifford BUTLER, Appellant,

v.

AMERICAN ASPHALT & CONTRACTING CO., a corporation, John L. Dendy and Inez Dendy, his wife, and John Doe and Jane Doe, his wife, aka Larry J. Richmond and Karen O. Richmond, his wife, Appellees.

No. I CA–CIV 2539.

Court of Appeals of Arizona,
Division 1.
Department A.
Sept. 25, 1975.

Hadley & Lea, by David Hadley, Jr., Phoenix, for appellant.

Norling, Rolle, King & Oeser, by James B. Rolle, III, Phoenix, for appellee American Asphalt.

K. G. Flickinger, Jr., Phoenix, for appellees Dendy.

Brown & Galasky, by D. Wayne Brown, Phoenix, for appellees Richmond.

## OPINION

OGG, Presiding Judge.

The plaintiff/appellant Clifford Butler brought this action to rescind an investment he made in purchasing controlling interest in the defendant/appellee American Asphalt and Contracting Co., an Arizona corporation. He claims the sale was fraudulent and violates the securities laws of this state. Butler also seeks to recover a loan he made to the corporation. He seeks recovery from the corporation and also from the appellees/defendants John L. Dendy and Inez Dendy, who are stockholders. Butler also seeks recovery from the defendant/appellee Larry J. Richmond, the attorney for the corporation, alleging that Richmond made false representations which induced Butler to buy an interest in American Asphalt.

In January, 1969, American Asphalt and Contracting Company was incorporated with John L. Dendy, Inez Dendy, his wife, and Larry J. Richmond, their attorney, as incorporators. Through the middle of 1971 the corporation did not follow any of the formalities which are peculiar to the corporate structure, such as meetings of directors and stockholders, and the keeping of corporate records. American Asphalt was incorporated with one million authorized shares of common stock with a par value of one dollar per share. Two 500,000 share certificates were printed to represent those shares and the Dendys received one of these certificates. In return the Dendys contributed approximately four thousand dollars in cash and a two thousand dollar bond filed with the Arizona State Corporation Commission registrar.

John Dendy managed all of the affairs of the corporation until mid-1971 when American Asphalt began to experience financial difficulties. In the spring of 1971 Mr. Dendy met Clifford Butler, a stockbroker, with whom he consulted about American Asphalt's financial problems. During the next several months the financial situation of American Asphalt grew worse. Mr. Dendy advised Mr. Butler that the corporation would need more capital to stay solvent and perhaps something might be worked out where Butler could buy an interest in the corporation.

In July, 1971, Dendy, Butler and Richmond met. After several meetings, it was decided that in return for Butler paying $10,000 to the corporation he would receive a 51% equity in the corporation. During these meetings Richmond told Butler that Dendy was a capable contractor and that it could be a lucrative venture for Butler if he were to invest in the corporation. Although Butler paid the $10,000 to the corporation, no stock was ever issued to him nor was the outstanding stock ever registered pursuant to §§ 44–1872 through 44–1875, Arizona Revised Statutes. In September, 1971, Butler assumed the duties of president of American Asphalt. Soon after this Butler became aware of the fact that Dendy had taken approximately

$20,000 of the corporation's money and used it to pay gambling debts which he had incurred in Las Vegas.

During the month of October, 1971, despite the corporation's continued financial problems, Butler loaned an additional $10,000 to American Asphalt to save the corporation from bankruptcy.

On January 13, 1972, and February 8, 1972, Butler made written demands for recision of his $10,000 investment in American Asphalt from Richmond and Dendy, and requested repayment of the $10,000 loan to the corporation. No money was ever repaid. On February 28, 1972, Butler filed this action in the Maricopa County Superior Court. After a trial to the court the defendants Dendy, Richmond and American Asphalt prevailed in each cause of action.

The thrust of the appeal presents us with essentially five questions: (1) whether the acquisition by Butler of 51% of the unregistered stock of American Asphalt for $10,000 constituted a sale of securities in violation of ARS § 44–1841, or was such a transaction the type of sale exempted by ARS § 44–1844? (2) If there was a violation of ARS § 44–1841, are the doctrines of estoppel and waiver available as a defense to Butler's exercising his right of recision pursuant to ARS § 44–2001 et seq.? (3) Is Richmond jointly and severally liable to Butler under ARS § 44–2003 as one who induced and participated in an unlawful sale of securities under ARS § 44–1841? (4) Is Butler entitled to recover a judgment against American Asphalt in the amount of his $10,000 loan, plus interest thereon? (5) Is Dendy personally liable to Butler for the $10,000 loan because of the treatment of the corporation as the "alter ego" of his personal financial self?

I. DID THE SALE TO BUTLER OF 51% OF AMERICAN ASPHALT'S STOCK CONSTITUTE A VIOLATION OF ARS § 44–1841 WHICH GOVERNS REGISTRATION OF SECURITIES OR WAS SUCH TRANSACTION EXEMPT UNDER ARS § 44–1844(3)?

The appellant Butler, plaintiff below, contends that his purchase of 51% of American Asphalt stock was an unlawful transaction in violation of ARS § 44–1841(A), which provides:

"A. It is unlawful to sell or offer for sale within or from this state any securities unless such securities have been registered by description under A.R.S. Section 44–1871 through 44–1875 or registered by qualification under A.R.S. Section 44–1891 through 44–1900, except securities exempt under A.R.S. Section 44–1843 or securities sold in exempt transactions under A.R.S. Section 44–1844."

The appellees-defendants below put forth essentially two arguments to support their contention that the transaction was not in violation of ARS § 44–1841. The first argument set out by appellee Dendy states that there is no violation because this is the type of transaction which is exempted by ARS § 44–1844(3) which exempts from registration:

"3. The sale in good faith and not for the purpose of avoiding the provisions of this chapter of securities by the bona fide owner thereof, other than an issuer or underwriter, in an isolated transaction, in which the securities are sold either directly or through a dealer as agent for the owner but where the sales are not made in the course of repeated or successive transactions of similar character by the owner and are not made directly or indirectly for the benefit of the issuer or an underwriter of the securities."

The second argument by the appellees which is urged by appellee Richmond is that the transaction in question involved no exchange of stock but rather that Butler, in return for his $10,000 investment, would acquire 51% of the business itself.

The transaction in question here was essentially designed to give Butler the controlling interest in American Asphalt. Butler purchased 51% of the corporation

from Dendy, who was the sole owner of American Asphalt. There were no shares of stock exchanged nor any calculations of how may shares of stock Butler now owned. He wanted the control of the corporation for his $10,000 investment; thus, what Butler bought was not 510,000 shares of American Asphalt but 51% of Dendy's interest in the company. ARS § 44–1844(3) was discussed in *State v. Allen*, 107 Ariz. 538, at 540, 490 P.2d 10, at 12 (1971), in which the court stated:

"We believe that the intent of the legislature was that owners who sold their stock in successive and repeated transactions *and* were selling for the benefit (directly or indirectly) of the issuer or underwriter were not to be entitled to the exemption granted by § 44–1844, ARS . . . We believe this statute puts a person in the position of being notified that if he wishes to sell his own stock in good faith, he is entitled to the exemption."

 We interpret ALLEN as recognizing that an exemption to securities registration exists where the owner of such securities or stocks sells them to another in an isolated transaction. See also *Riffle v. Robert L. Parker Company*, 19 Ariz.App. 100, 505 P.2d 268 (1973) and *Kalav v. Pitt*, 18 Ariz.App. 478, 503 P.2d 833 (1972). The purpose of the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., from which the Arizona Act governing the sale of securities, ARS § 44–1801 et seq., was derived, is to safeguard the investing public from fraudulent devices and tricks in the sale of securities by requiring publication of certain information concerning securities before they are offered for sale. *Campbell v. Degenther*, 97 F.Supp. 975 (D.C.Pa. 1951).

 In the present case no such protections were needed since Dendy was not selling his stocks to the public but to Mr. Butler, an experienced stockbroker. The Securities Act of 1933, on which the Arizona statutes regulating securities was based (ARS § 44–1801 et seq.), was not in-

tended as a protection for those able to fend for themselves. *Garfield v. Strain*, 320 F.2d 116 (C.A.Colo. 1968). The Securities Act of 1933, as is the case with the Arizona statutes, seeks to regulate public offerings of securities rather than private isolated transactions to men experienced in the field. This policy is clearly stated in the case of *Securities and Exchange Commission v. Ralston Purina*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). In that case, the court observed:

Broadly speaking, an offering is a public offering where any, some or all of the persons to whom the security is offered stands in need of the protection offered by registration of the security. This in effect depends upon whether or not they have knowledge or access to the kind of information that a registration statement would disclose.

Relating this observation by the United States Supreme Court to the present case, we may assume that the exemption stated in ARS § 44–1844(3) applies in that there is no public offering here but rather an isolated transaction involving a man who definitely had access to precisely the same type of information that a registration statement would disclose. Mr. Butler is not the person whom the Arizona securities regulations, specifically ARS § 44–1844(3) sought to protect nor is this isolated transaction the type of transaction that comes within the purview of that statute.

II. THE QUESTIONS CONCERNING THE DEFENSE OF WAIVER AND ESTOPPEL AND ATTORNEY RICHMOND'S LIABILITY ARE MOOT.

Since we have found that there was no violation by the appellees/defendants of ARS § 44–1841, which prohibits the sale of unregistered securities, the question concerning the defense of waiver and estoppel as applied by defendants to Butler's claims of recovery under ARS §§ 44–2001 and 44–2003 is moot. In addition, since the claim of liability on attorney Richmond's part is founded on a violation of ARS §

44–1841, and since there was no such violation, we find the question of Richmond's liability also moot.

## III. IS BUTLER ENTITLED TO A JUDGMENT AGAINST AMERICAN ASPHALT FOR THE $10,000, PLUS INTEREST, AS REPAYMENT FOR THE LOAN MADE TO THE CORPORATION?

Butler assumed control of the corporation on September 1, 1971, and in an attempt to save it from bankruptcy he loaned the corporation $2,500 on October 21, 1971, and an additional $7,500 on October 27, 1971. These loans were not repaid.

It appears that Butler is entitled to a judgment against American Asphalt for the $10,000, the amount of these loans, plus interest from the date of the loans. In the parties' Joint Pre-Trial Statement these facts were stipulated to and there appears to be no valid dispute on this issue.

## IV. IS DENDY PERSONALLY LIABLE TO BUTLER FOR THE $10,000 WHICH HE LOANED THE CORPORATION BECAUSE OF HIS TREATMENT OF THE CORPORATION AS THE ALTER EGO OF HIS PERSONAL FINANCIAL SELF?

As was stated above, American Asphalt, when run by Dendy, failed to observe the formalities that are inherent in conducting a corporation. The plaintiff claims that this, coupled with the fact that Dendy, on numerous occasions, made loans to himself from corporate funds, gave rise to a situation where American Asphalt was merely the alter ego of Dendy's personal financial self and thus is liable to Butler for the $10,000 he loaned the corporation.

A corporation may not be formed for the purpose of perpetrating a fraud or other illegal act under the guise of the fiction that a corporation is a legal entity, separate and distinct from its members. When this is attempted the fiction will be disregarded by the courts and the acts of the real parties dealt with as though no corporation had been formed. *Rice v.*

*Sanger Brothers*, 27 Ariz. 15, 229 P. 397 (1924). When the observance of the corporate form would sanction a fraud or promote injustice, it will be disregarded. Rice, supra. Further, the disregard of the corporate fiction has not been limited to instances where the incorporation is for fraudulent purposes, but may be observed if after organization the corporation is employed for fraudulent purposes. *Employer's Liability Assurance Corporation v. Lunt*, 82 Ariz. 320, 313 P.2d 393 (1957).

In the present case, Dendy, as he himself testified, treated the corporation as his personal proprietorship. He appropriated checks that were paid to the corporation to pay off personal debts he incurred in Las Vegas. In one instance he took a check that was due a subcontractor and cashed it for payment of these same debts. Furthermore, the testimony at trial casts some doubt on the truthfulness of representations made by Dendy to Butler concerning the assets of American Asphalt. Together, these facts tend to show that Dendy did treat the corporation as his financial alter ego. However, plaintiff Butler asks us to hold Dendy liable for $10,000 in loans made by him (Butler) to the corporation on October 21 and October 27, 1971. On these dates Butler had already assumed control of the corporation and was or should have been cognizant of all the facts relating to Dendy's past treatment of the corporation. Thus, Butler had no right to rely on any previous statements made by Dendy. Not having a right to rely on these statements, Butler cannot meet one of the elements of actionable fraud which are requisite in Arizona. See *Apolito v. Johnson*, 3 Ariz.App. 232, 413 P.2d 291 (1966) modified, rehearing denied, 3 Ariz.App. 358, 414 P.2d 442 (1966); *Reese v. Cradit*, 12 Ariz.App. 233, 469 P.2d 467 (1970); *Town & Country Chrysler Plymouth v. Porter*, 11 Ariz.App. 369, 464 P.2d 815 (1970). Butler's lack of a right to rely is accentuated by the fact that as an experienced stockbroker and businessman he invested and loaned money to

American Asphalt with full knowledge of the corporation's financial problems. He took a calculated business gamble to secure control of this financially troubled corporation and unfortunately lost. We therefore find, that although Dendy had been operating American Asphalt as an alter ego to himself, previous to Butler's assumption of control of the corporation, there is no liability on Dendy's part for the $10,000 loan made by Butler to the corporation after attaining control of American Asphalt.

The judgment of the trial court is affirmed on all matters herein except that we reverse that portion of the judgment denying Butler recovery of the loans to American Asphalt. This case is remanded to the trial court with directions to enter a judgment in favor of Butler and against American Asphalt for the sum of $10,000, together with interest thereon from the dates of the loans.

DONOFRIO and WREN, JJ., concurring.