Kay SHEPHERD, Appellant,

v.

BERING SEA ORIGINALS, Arctic Originals and Carol Chase, Appellees.

No. 3210.

Supreme Court of Alaska.

May 5, 1978.

A. Lee Petersen, Fraties & Petersen, Anchorage, for appellant.

Jerry F. Melcher, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BOOCHEVER, Chief Justice.

This appeal involves the following questions: (1) whether a dismissal of Chapter XI bankruptcy proceedings by a bankruptcy court bars a secured creditor from litigating an issue that was resolved, as far as unsecured creditors are concerned, by the action of the bankruptcy court; and (2) whether the proceeds of an insurance policy on the life of the president of a closely-held corporation should be regarded as belonging to the corporation, which paid a substantial portion of the premiums.[1] The bankruptcy court recognized the assignment of a secured interest covering essentially all of the assets of Bering Sea Originals, Inc. ("BSO") from the Alaska State Bank ("Bank") to Carol Chase, the sole shareholder in the corporation in consideration of $339,160.76 which Chase paid the Bank. Ms. Chase was a guarantor of BSO's repayment of the Bank's loans to the corporation. Kay Shepherd, a secured creditor of BSO whose security interest was junior to that of the Bank and who was present with her attorney at the bankruptcy proceedings, seeks to have that assignment set aside so that her security interest would have priority with respect to the assets of BSO, which admittedly were less than the amount of the Bank's secured indebtedness.[2] It is Ms. Shepherd's contention that an insurance policy in the amount of $300,000.00 taken out on the life of Edward E. Chase, former president of BSO, should have been regarded as security for the bank loan rather than as security for Ms. Chase's guarantee of the loan, so that when Mr. Chase died on November 29, 1974, the proceeds of the policy should have eliminated the indebtedness to the extent of the amount received from the policy. The contention is based on the fact that BSO paid a substantial amount of the premiums on that policy and another policy taken on the life of Mr. Chase.

Ms. Chase filed a motion for summary judgment. The superior court concluded

---

1. The beneficiary of the policy was the corporation president's widow. The policy was originally required by a bank as a condition for a loan to the corporation.

2. The general manager of Bering Sea Originals in an affidavit estimated the company's assets to be approximately $245,000.00 as of February 1975.

that no genuine issues of material fact were presented and that Ms. Chase was entitled to summary judgment. We will first determine whether Ms. Shepherd is bound by the bankruptcy court's determination under the doctrines of res judicata or collateral estoppel. We will next consider whether the superior court correctly ruled that no genuine issues of material fact existed as to whether the corporate veil of Bering Sea Originals, Inc. should be pierced.

## RES JUDICATA AND COLLATERAL ESTOPPEL

The doctrines of res judicata and collateral estoppel are well settled in Alaska. In *State v. Baker*, 393 P.2d 893, 896–97 (Alaska 1964), we defined the application and purpose of res judicata:

> This doctrine bars a second suit between the same parties on the same subject matter resolving the same issues between the parties in the same capacity or quality. It is founded upon the principle that parties ought not to be permitted to litigate the same issue more than once and that when a right or fact has been judicially determined by a court of competent jurisdiction or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties and those in privity with them in law or estate. (footnotes omitted)

We also recognized and defined the doctrine of collateral estoppel:

> While the general rule of res judicata applies to repetitious suits involving only the same cause of action it has been employed in situations where the second action between the same parties is upon a different cause or demand. But in the latter event the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but only as to those matters in issue or points controverted, upon

the determination of which the finding or verdict was rendered. Res judicata is then more accurately referred to as collateral estoppel or estoppel by judgment. *Id.* at 897. (footnote omitted) [3]

 When an issue has been litigated by a party and judgment rendered against him, that party or any party in privity with him may not again raise the issue in subsequent litigation. The defense of res judicata may be based upon a prior dismissal on the merits of plaintiff's action against defendant.[4] In *Pennington v. Snow*, 471 P.2d 370, 375 (Alaska 1970), this court said the following about privity:

> We are persuaded that the existence of privity must depend upon a finding that the first action provided substantial protection of the rights and interests of the non-party. In each case, then, the determination of whether privity exists must be made by an analysis of the relationship of the rights and interests of the parties to be held in privity. In the course of undertaking this analysis we are guided by the requirements of due process as set out by the United States Supreme Court in *Hansberry v. Lee*, 311 U.S. 32, . . . 85 L.Ed. 22 (1940). Accordingly, before privity may be found to exist, the non-party must have notice and an opportunity to be heard; the procedure must insure the protection of the rights and interests of the non-party, and he must in fact be adequately represented by the parties. The extent to which the interests of the non-party are identical to those of the parties of the action provides a gauge for the determination of the adequacy of representation.

 Applying these principles to the present appeal, we find that Kay Shepherd was present at the bankruptcy proceedings and also had an attorney with her on one occasion and had an attorney present on a second occasion. There is no indication, however, that she or her attorneys partici-

---

**3.** *See also Larsen v. The M/V Teal*, 193 F.Supp. 508, 510 (D. Alaska 1961); *Jefferson v. Greater Anchorage Area Borough*, 451 P.2d 730, 732–33 (Alaska 1969).

**4.** *See Jefferson v. Greater Anchorage Area Borough*, 451 P.2d at 732.

pated actively in the proceedings other than possibly presenting a claim as a secured creditor. A purpose of Chapter XI of the Bankruptcy Act is to provide for an extension of time to pay unsecured debts of a corporation.[5] Secured creditors are not within the definition of "creditors" contained in this chapter.[6] A number of cases hold that secured creditors are not affected by orders entered in a Chapter XI proceeding.[7] Nevertheless, a secured creditor may participate in the proceedings and can be bound by agreements to come under the arrangement.[8] Here, however, there is no evidence that either Ms. Shepherd or her attorneys made any representations at the bankruptcy proceedings, either orally or in writing. As far as can be ascertained from the materials submitted in support of the summary judgment, she was merely an observer at those proceedings. We thus hold that she was not barred by the doctrine of res judicata.

The question is still presented as to whether she was in privity with the unsecured creditors so as to be bound by a stipulation which was entered into whereby the proceeds of insurance were paid over to the Bank, and Ms. Chase secured an assignment of the Bank's security interest. Apparently, after a day's hearing, the bankruptcy proceeding was disposed of by dismissal. Under those circumstances, we do not believe that it can be stated that Ms. Shepherd's interests were so represented at the proceedings as to form a basis for collateral estoppel. We thus conclude that the trial court erred in granting summary judg-

ment on the basis of res judicata or collateral estoppel.

## DISREGARDING THE CORPORATE ENTITY

■ It is Ms. Shepherd's contention that the proceeds of the life insurance policy, instead of inuring to Ms. Chase's benefit, should have been utilized to satisfy the debt of the corporation, thus reducing the secured indebtedness to the Bank by that amount. In effect, Ms. Shepherd asks us to disregard the distinction between the corporation and the sole shareholder and consider the insurance benefits paid to Ms. Chase as though they belonged to the corporation. There are many decisions in which courts have pierced the "veil of corporate fiction" and have held stockholders personally liable for corporate obligations.[9] As required in the interests of justice, corporate assets have been regarded as assets of an individual, and an individual's assets have been held to inure to the benefit of a corporation.[10] Generally speaking, such decisions have been based on the requirements of justice or to prevent fraud, bad faith or other wrong.[11] Where the stockholders have themselves disregarded the corporate entity, the courts will sometimes do the same. Ms. Shepherd bases her attack on the contention that the corporation was inadequately capitalized and the further fact that the distinction between the corporation and Ms. Chase was not maintained with reference to the insurance policies in question. The capitalization argument is of lit-

---

5. 11 U.S.C. § 706 (1970).

6. *Id.* at § 707(1).

7. *See, e. g., Harvey v. Critchfield Marine, Inc.,* 20 N.C.App. 713, 202 S.E.2d 501, 502 (1974); *cf., SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 452–53, 60 S.Ct. 1044, 1051–1052, 84 L.Ed. 1293, 1302 (1939) (Chapter XI proceedings alter relations of unsecured creditors only).

8. *See Farmer Bros. Co. v. Huddle Enterprises, Inc.,* 366 F.2d 143, 146–47 (9th Cir. 1966).

9. *See generally,* Henn on Corporations, § 147 at 256–58 (2d ed. 1970).

10. *See Palm Gardens, Inc. v. Oregon Liquor Control Commission,* 15 Or.App. 20, 514 P.2d 888, 891 (1973); Fletcher on Private Corporations, § 44 at 238–40 (rev. 1974). *See also,* Dizenfeld, Close Corporations in Alaska, 7 U.C. L.A.—Alaska L.Rev. 123, 161–65 (1977).

11. *Rosebud Corp. v. Boggio,* 561 P.2d 367, 371 (Colo.App.1977); *Amoco Chemicals Corp. v. Bach,* 222 Kan. 589, 567 P.2d 1337, 1341–42 (1977); *Butler v. American Asphalt & Contracting Co.,* 25 Ariz.App. 26, 540 P.2d 757, 761 (1975); *Burns v. Norwesco Marine, Inc.,* 13 Wash.App. 414, 535 P.2d 860, 862–63 (1975); 46 A.L.R.3d 428.

tle significance in this case as the corporation was originally incorporated by Ms. Shepherd and two others. The assets were subsequently transferred to the Chases so they were not responsible for the initial capitalization.

 A more serious question is presented, however, by the manner in which the insurance policy was handled. The Bank required a policy of $300,000.00 on Mr. Chase's life as a condition for granting its loan in that amount to BSO. Mr. and Ms. Chase personally guaranteed the loan and assigned the life insurance policy as security for their liability. Thus, technically, the life insurance policy was to secure the guarantee, not the underlying loan. The policy was owned by Ms. Chase from the time of its purchase and was on the life of Mr. Chase, with Ms. Chase being the beneficiary.

A second policy in the amount of $200,-000.00 with double accidental death benefits was likewise taken out on Mr. Chase's life. Originally, he owned that policy and subsequently assigned the ownership to Ms. Chase. Premiums for the two policies were paid as follows:

| Date | Check No. | Maker | Amount | Payee |
|---|---|---|---|---|
| 12/10/71 | 808 | BSO | $1,408.00 | N.Y.L. |
| 11/30/72 | 1938 | BSO | 2,001.00 | N.Y.L. |
| 12/8/72 | 1967 | BSO | 1,408.00 | N.Y.L. |
| 8/16/73 | 5033 | BSO | 520.26 | E. E. Chase |
| 11/5/73 | 5284 | BSO | 519.00 | N.Y.L. |
| 12/4/73 | 5402 | BSO | 437.84 | N.Y.L. |
| 2/4/7[4][12] | 6089 | BSO | 519.00 | Central Service Office N.Y.L. |
| 3/5/74 | 136 | C. F. Chase | 438.00 | N.Y.L. |
| 4/18/74 | 152 | C. F. Chase | 519.00 | N.Y.L. |
| 6/10/74 | 167 | C. F. Chase | 438.00 | N.Y.L. |
| 7/20/74 | 196 | C. F. Chase | 627.00 | N.Y.L. |
| 10/11/74 | 143 | BSO | 438.00 | N.Y.L. |
| 11/12/74 | 273 | C. F. Chase | 86.78 | N.Y.L. |
| 11/20/74 | 220 | BSO | 540.27 | Carol F. Chase |

Thus, BSO paid premiums in the amount of $7,791.37 whereas Ms. Chase paid premiums in the total amount of $2,108.78. At the time that the premiums were paid by BSO, the corporation was indebted to the Chases in a sum in excess of the amounts paid as premiums. An accounting entry was later made whereby BSO was repaid for those premiums by reduction of the debt owed the Chases. The record does not indicate when this accounting transaction took place so that it may have occurred after the dispute arose in the present case, or it may have occurred shortly after Mr. Chase's death. Since the last payment made by the corporation for premiums was on November 20, 1974, but nine days prior to his death, it must be assumed that the accounting records were not changed prior to his death.

The case presents a close question as to whether sufficient facts were established by Ms. Shepherd to prevent the summary judgment. We believe, however, that the handling of the premiums—plus the facts that the life insurance was obtained at the request of the Bank as a condition for granting the loan to BSO and that the beneficiary was Ms. Chase—presents a sufficient basis for a factual question to be resolved at trial as to whether the proceeds of the policy should be considered as inuring to the corporation's benefit, reducing the security interest of the Bank which was assigned to Ms. Chase.

The case is remanded to the trial court for determination of this issue.

REVERSED AND REMANDED.

---

12. We believe that the record's designation of this date as "2/4/76" is a typographical error.